## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EVE ZAVODNICK,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civ. No. 10-7125** |
| | : | |
| **GORDON & WEISBERG, P.C.,** | : | |
| **Defendant.** | : | |
| | : | |
| | : | |

---

**Diamond, J.**                                                                 **June 6, 2012**

## <u>MEMORANDUM</u>

Having obtained a $1,500 settlement for Plaintiff before discovery began in this simple, Fair Debt Collection Practices Act case, the law firm of Kimmel & Silverman now seeks the award of $9,786.50 in fees and $350 in costs.  Defendant Gordon & Weisberg argues that the fee request is excessive.  I agree.  It appears that Kimmel & Silverman actually performed precious little original work on Plaintiff's behalf.  As disturbing are Kimmel & Silverman's specious arguments and evidence, which Courts in this Circuit have repeatedly and decisively rejected:

> [T]he Court notes at the outset that this is by no means the first time that Kimmel & Silverman's fees have been reduced by a [C]ourt . . .  Accordingly, the Court finds itself puzzling over Kimmel & Silverman's insistence on claiming the same fee rates in each of its FDCPA cases. Should another such petition reach this Court in the future, we hope not to have to puzzle over it again.

<u>Levy v. Global Credit and Collection Corp.</u>, 10-4229, 2011 WL 5117855 (D. N.J. Oct. 27, 2011) (citations omitted); <u>see also</u>  Mary Pat Gallagher, <u>Fair Debt Collection Practices Firm Chastened For Inflated Fee Request</u>, N.J. L.J., Nov. 7, 2011.  For the reasons that follow, I will allow the firm its costs but reduce its fee award to $3,053.  I am compelled to admonish Kimmel & Silverman that it may not continue with impunity to describe "cut and paste" efforts as original

or to advance arguments and evidence it knows to be baseless.

## I.        Background

On December 8, 2010, Plaintiff Eva Zavodnick filed an eleven page Complaint in this Court, alleging that Defendant, a debt collection firm, violated the FDCPA.  15 U.S.C. § 1692 *et seq.*  The bulk of the Complaint includes boilerplate allegations respecting the Act, its purposes, and the liability it imposes. Perhaps four pages include factual and legal allegations tailored to this matter.  Indeed, with the exception of those four pages, the Complaint is identical to those Kimmel & Silverman has earlier filed on behalf of other clients.  See Overly v. Global Credit and Collection Corp. Inc., No. 10-2392 (M.D. Pa. Complaint filed Nov. 18, 2010); Williams v. NCO Fin. Sys., Inc., No. 10-5766 (E.D. Pa. Complaint filed Oct. 29, 2010); Levy v. Global Credit and Collection Corp., 10-4229 (D. N.J. Complaint filed Aug. 18, 2010); Conklin v. Pressler and Pressler LLP, 10-3566 (D. N.J. Complaint filed July 14, 2010).

Ms. Zavodnick charged that in seeking to collect a $2,211.68 debt, Defendant employed improper methods: 1) failing conspicuously to identify itself as a debt collector on the cover page of a December 3, 2009 collection letter; 2) stating incorrectly that Plaintiff owed a second debt; 3) communicating with Plaintiff's husband about the debt without Plaintiff's consent; 4) harassing Plaintiff; and 5) taking other unspecified actions.

On February 17, 2011, the Complaint was served on Defendant, which had until March 10, 2011 to answer.  *(Doc. No. 3.)*  Having received no responsive pleadings, on April 11, 2011, my Chambers issued written notice that Plaintiff had until April 15, 2011 to seek default judgment. *(Doc. No. 4.)* Defendant submitted its Answer on April 12, 2011. *(Doc. No. 6.)*  On April 18, 2011, Plaintiff received Defendant's Offer of Judgment, which she accepted on April

26, 2011. The Offer is clearly dated April 18, 2011, and provides in relevant part that Defendant

> offers to allow judgment to be taken against it in the amount of $1,500.00 (One
> Thousand Five Hundred Dollars and no cents), plus 1) your reasonable attorneys
> fees and costs, *through the date of this Offer of Judgment*, as may be determined
> by the Court; 2) your actual costs for the filing fee of your complaint in the U.S.
> District Court; and, 3) your actual costs for service of the summons and complaint
> upon the Defendant.
>
> *(Doc. No. 13, Ex. A.)* (emphasis added).

In addition to its costs, Plaintiff seeks counsel fees incurred from September 17, 2010—

the date of the initial client interview—through May 10, 2011—when Plaintiff filed the instant

Petition.  Kimmel & Silverman employed four lawyers (whose hourly rates range from $300 to

$425); a "law clerk" (whose hourly rate is $180); three paralegals (whose hourly rates range

from $155 to $165); and an "IT specialist" (whose hourly rate is $150).  Together, this group of

nine professionals spent 32.2 hours on this matter. These are largely the same Kimmel &

Silverman professionals whose rates and hours have been substantially and repeatedly reduced

by Courts in this Circuit. See Conklin v. Pressler and Pressler LLP, 10-3566, 2012 WL 569384

(D. N.J. Feb. 21, 2012) (Kimmel & Silverman claimed fees of $28,005.70 cut to $16,387.70);

Freid v. Nat'l Action Fin. Servs., Inc., No. 10-2870, 2011 WL 6934845 (D. N.J. Dec. 29, 2011)

(claimed fees of $97,028.59 cut to $11,994);  Levy v. Global Credit and Collection Corp., No.

10-4229, 2011 WL 5117855 (D. N.J. Oct. 27, 2011) (claimed fees of $9,211.50 cut to

$5,795.00); Overly v. Global Credit and Collection Corp. Inc., No. 10-2392, 2011 WL 2651807

(M.D. Pa. July 6, 2011) (claimed fees of $9,000 cut to $2,457.20).

## II.    Discussion

Defendant argues that:  1) Plaintiff is precluded from recovering fees for work done after

she received the Offer of Judgment; 2) Kimmel & Silverman's hourly rates are unreasonably

high; and 3) Kimmel & Silverman's hours are excessive, non-compensable, and duplicative.  I
agree with all three contentions.

    A.  <u>Compensable Period</u>

Defendant's Offer provides that judgment entered in Plaintiff's favor shall include
"reasonable attorneys fees and costs, *through the date of this Offer of Judgment*, as may be
determined by the Court."  (emphasis added). Plaintiff does not dispute that Defendant served the
Offer of Judgment on April 18, 2011.  Plaintiff nevertheless seeks fees for work Kimmel &
Silverman performed through May 10, 2011, arguing that the "language is ambiguous as it is
unclear what the 'date of this Offer of Judgment' is."*(Doc. No. 13* at 14.*)*  In support, Plaintiff
misstates the holding of "the Honorable Cynthia M. Ruff (sic)" of this Court in <u>Angel Rivera v.</u>
<u>NCO Fin. Sys., Inc.</u>, No. 11-00402 (E.D. Pa. May 2, 2011).   Judge Rufe there permitted Kimmel
& Silverman to recover fees through the Offer's acceptance and filing because the Offer was not
dated.  Here, the Offer of Judgment is dated and explicitly provides for the recovery of
reasonable costs and fees "through the date of this Offer of Judgment."

Interpreting language identical to that at issue here, Judge Slomsky twice ruled that the
Offer unambiguously excluded fees Kimmel & Silverman incurred after the Offer was served.
<u>Alexander v. NCO Fin. Sys., Inc.</u>, No. 11-401, 2011 WL 2415156 (E.D. Pa. June 16, 2011)
(excluded fees incurred after the date the Offer was served); <u>Williams v. NCO Fin. Sys., Inc.</u>,
No. 10-5766, 2011 U.S. Dist. LEXIS 50635, at *9-10 (E.D. Pa. May 11, 2011) (same).  I agree
with Judge Slomsky.  <u>See</u> <u>Princeton Ins. Co. v. Converium Reins. (North America)</u>, 344 F.
App'x 759, 763 (3d Cir. 2009) (quoting 9 Williston on Contracts § 46 (rev. ed. 1945) ("in
interpreting a contract, all parts of the writing and every word of it, will, if possible, be given
effect . . .").

If Plaintiff is determined to collect fees incurred after the April 18th cut-off, she should have rejected the Offer and negotiated for fees beyond that date.  See Andrews v. Prof'l Bureau of Collections of Md., Inc. 270 F.R.D. 205 (M.D. Pa. 2010).  Because she did not do so, I will hold her to the benefit of her bargain.

Plaintiff also seeks fees for the 3.4 hours Kimmel & Silverman spent preparing the instant Fee Petition.  Such fees are recoverable "because the policies behind statutory fee awards apply equally to time spent preparing the fee petition." Bagby v. Beal, 606 F.2d 411, 416 (3d Cir. 1979).  Nevertheless, "courts also make clear that an Offer of Judgment is a contract and if a party has agreed to the accrual date therein, that date will control."  Williams, 2011 U.S. Dist. LEXIS 50635 at *10 n.2 (collecting cases).

Because the instant Offer states that counsel fees might be determined "by the Court," the Parties plainly contemplated that Plaintiff might petition for those fees.  Because the preparation of that petition would necessarily take place *after* the Offer's April 18th cut-off, any fees incurred for that preparation are necessarily excluded.  See Basha v. Mitsubishi Motor Credit of America, Inc., 336 F.3d 451, 453-54 (6th Cir. 2003) (giving effect to the settlement agreement's plain language).

I also note that only 3 pages of Ms. Zavodnick's 34-page Fee Petition (filed May 11, 2011) include allegations tailored to this case; the remaining 30 pages include boilerplate discussions of the FDCPA and the awarding of fees.  Indeed, these 30 pages are identical to those included in Kimmel & Silverman's 33-page Fee Petitions in Angel Rivera v. NCO Fin. Sys., Inc., No. 11-0402 (E.D. Pa. Petition filed Apr. 13, 2011) and Alexander v. NCO Fin. Sys., Inc., No. 11-0401 (E.D. Pa. Petition filed Apr. 13, 2011), and 32-page Petition in Williams v. NCO Fin. Sys., Inc., No. 10-5766 (E.D. Pa. Petition filed March 17, 2011).

Remarkably, in the Zavodnick Petition, Kimmel & Silverman protests repeatedly that "[t]here is no 'assembly line' approach to handling FDCPA cases." *(Doc. No. 13 at 13)* ("At Kimmel & Silverman, each FDCPA case must . . . be evaluated and handled on an individual basis."); *(Id. at 16)* ("[T]he pleadings in this matter do not read like 'cookie cutter' vague allegations from a generic form . . . .") Yet, an examination of the two most substantial documents Kimmel & Silverman filed in this matter—the Complaint and the Fee Petition—confirm that the great bulk of Kimmel & Silverman's work was not original, but simply copied from work it had done earlier in other cases. This suggests, to put it kindly, that the claimed 3.4 hours of attorney time were not actually spent preparing Ms. Zavodnick's Fee Petition.

In any event, I will exclude the 3.4 hours purportedly spent preparing the Petition because the alleged work was performed after April 18, 2011.

### B. Calculating Reasonable Rates

The FDCPA allows prevailing plaintiff "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The initial, "lodestar" calculation "is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see Damian J. v. Sch. Dist. of Pa., 358 F. App'x 333, 334 (3d Cir. 2009) In determining a reasonable hourly rate, I must consider:

(1) The time and labor required;

(2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal services properly;

(4) Preclusion of other employment by the attorney due to acceptance of the case;

(5) The customary fee in the community;

(6) Whether the fee is fixed or contingent;

(7) Time limitations imposed by the client or the circumstances;

(8) The amount of time involved and the results obtained;

(9) The experience, reputation, and ability of the attorneys;

(10) The "undesirability" of the case;

(11) The nature and length of the professional relationship with the client; and

(12) Awards in similar cases.

Johnson v. Ga. Highways Express, 488 F.2d 714 (5th Cir. 1974); Hall v. Borough of Roselle,

747 F.2d 838, 842 (3d Cir. 1984) (applying Johnson factors to determine reasonable rates); see

also Blum v. Stevens, 465 U.S. 886 (1984). Plaintiff seeks the following hourly rates:

> Attorney Craig Thor Kimmel: $425/hour
>
> Attorney Amy Bennecoff: $300/hour
>
> Attorney Tara Patterson: $300/hour
>
> Attorney Sarah Young: $300/hour
>
> Law Clerk Jacob Ginsburg: $180/hour
>
> Paralegal Christy Sunchych: $165/hour
>
> Paralegal Chloe O'Connell: $165/hour
>
> Paralegal Jason Ryan: $155/hour
>
> IT Professional Jeff Ehrmann: $150/hour

In support, Kimmel & Silverman has submitted evidence relevant to law practice in other

regions. The firm offers affidavits from two consumer protection lawyers—one a member of the

California Bar; the other a member of the Illinois and Florida Bars—who do not practice in this

Circuit. *(Doc 13 Ex. D.)* Like the other Judges to whom Kimmel & Silverman has made this

presentation, I will not consider the opinions of these lawyers regarding rates in this market.  See

Freid v. Nat'l Action Fin. Servs., Inc., No. 10-2870, 2011 WL 6934845 at *7 (D. N.J. Dec. 29,

2011) ("Finally, in support of reasonableness, K&S continues to submit an identical affidavit . . .

despite the fact that this affidavit's reliability has been called into question."); Cassagne v. Law

Offices of Weltman, Weinberg & Reis Co., LPA, No. 11-2791, 2011 WL 5878379 at * 5 (D. N.J.

Nov. 23, 2011) (finding identical affidavits  "unpersuasive"); Weed-Schertzer v. Nudleman

Klemm & Golub, No. 10-6402, 2011 WL 4436553 at *4 (D. N.J. Sept. 23, 2011) ("Mr.

Bontrager is a fairly recent (2007) law school graduate with no connection to this forum.");

Levy v. Global Credit and Collection Corp., 10-4229, 2011 WL 5117855 at *4 (D. N.J. Oct. 27,

2011) (rejecting identical affidavits); Williams, 2011 U.S. Dist. LEXIS 50635 at *13 n.4 (same).

  Kimmel & Silverman also submits a 2007 "Consumer Law Attorney Fee Survey," which

purports to include average attorney fees in the mid-Atlantic region, as reported by members of

the National Association of Consumer Advocates and Consumer Law Attorneys.  (Id. Ex. F.)

Kimmel & Silverman has had a similar lack of success in presenting this Survey to the Judges in

this Circuit. See Freid, 2011 WL 6934845 at *7 ("The Court is surprised by [K & S's]

persistence in shopping the Survey around to various courts in this region, despite its track record

in the Circuit." (quoting Levy, 2011 WL 5117855 at *3)); Williams, 2011 U.S. Dist. LEXIS

50635 at *14.  I agree that the Survey is "not indicative of the practice related to FDCPA cases"

in this region.  Freid, 2011 WL 6934845 at *6.

  Lastly, Plaintiff suggests that Kimmel & Silverman's rates should be set in accordance

with those in the "Laffey Matrix," created by the U.S. Attorneys Office for the District of

Columbia.  Once again, every Judge in this Circuit to whom K & S has offered the Laffey Matrix

has rejected it. See Freid, 2011 WL 6934845 at *7 ("[T]he courts in this District have

consistently dispelled the relevance of the Laffey Matrix."); <u>Alexander</u>, 2011 WL 2415156 at *4 n.6; <u>Williams</u>, 2011 U.S. Dist. LEXIS 50635 at *15 n.6; <u>Cassagne,</u> 2011 WL 5878379 at *5; <u>Levy</u>, 2011 WL 5117855 at *3; <u>Weed-Schertzer</u>, 2011 WL 4436553 at * 4.   I agree that because the Laffey Matrix includes billing rates for attorneys in the Washington D.C. area, it is not probative of rates in this market.   See <u>Interfaith Cmty. Org. v. Honeywell Int'l Inc.</u>, 426 F.3d 694, 708-10 (3d Cir. 2005) (describing the Laffey Matrix as setting forth reasonable rates for the Washington D.C. area).

Defendant asks me to apply the lower rates in the 2006 Fee Schedule published by Philadelphia Community Legal Services, Inc.  The Third Circuit and this Court have accepted the CLS Fee Schedule in some circumstances—when the attorneys were associated with CLS, or when the parties submitted limited evidence regarding fees.  See <u>Maldonado v. Houstoun</u>, 256 F.3d 181, 187 (3d Cir. 2001) (using the CLS Fee Schedule as indicative of reasonable rates where the parties presented little evidence); <u>Farley v. Phila. Housing Auth.</u>, No. 01-1294, 2002 WL 32348272, at *2 (E.D. Pa. Apr. 29, 2002) (using CLS rate for attorney employed by CLS).

Although this case does not involve CLS-affiliated lawyers, I will use the Survey because Plaintiff has failed to submit credible evidence of prevailing market rates.  I will also consider that the Survey: 1) does not reflect counsel's specialized skills or experience; and 2) is six years old.

Lead counsel Craig Thor Kimmel has practiced for 22 years and bills at an hourly rate of $425.  Although Plaintiff claims that Mr. Kimmel "has received [$425 an hour] from courts in individual and class action claims," she offers no cases in which such an award was actually made.  *(Doc. No. 13 at 22.)*  The CLS Schedule provides that the average hourly rate for an attorney with 21 to 25 years experience is $290 to $330.  Although Mr. Kimmel is an

experienced lawyer, it would appear that his FDCPA experience is recent.  *(Doc. No. 15 Ex. F.)*
In any event, according to his time entries, he performed very little substantive work in this very
simple case.  Indeed, given the small amount of original work Kimmel & Silverman actually
performed on Plaintiff's behalf, I do not know why this matter required the ministrations of four
lawyers, a law clerk, three paralegals, and an IT specialist.  In any event, I conclude that $290 is
a reasonable hourly rate for the work Mr. Kimmel performed here.

Amy L. Bennecoff has practiced law for six years and bills at an hourly rate of $300 for
FDCPA matters.  The CLS Schedule provides that Bennecoff's hourly rate is $200 to $230.  Ms.
Bennecoff's affidavit details her experience in FDCPA litigation. *(Doc No. 12, Ex. C.)* In light of
the minimal original work performed by Ms. Bennecoff, however, I conclude that an hourly rate
of $200 is reasonable.

Attorney Tara Patterson has ten years experience, and bills at an hourly rate of $300 for
FDCPA matters.  The CLS Schedule provides that Ms. Patterson's hourly rate is $200 to $230.
In her affidavit, Ms. Patterson notes only that she has handled "countless" consumer protection
cases since joining Kimmel & Silverman in November 2009.  *(Doc No. 12, Ex. C.)*  She
previously worked in the Pennsylvania Governor's Office.  Although Ms. Patterson has practiced
law for ten years (four more than Ms. Bennecoff), she has spent only two years litigating
consumer protection matters.  *(Id.)* Moreover, Ms. Patterson's time enries show that her work
was limited to receiving and sending emails.  *(Doc. No. 12, Ex. B.)*  Accordingly, I conclude that
$175 is a reasonable hourly rate for Ms. Patterson.

Sarah Young has practiced law for seven years and bills at an hourly rate of $300 for
FDCPA matters.  The CLS Schedule provides that Ms. Young's hourly rate is $200 to $230.  Ms.
Young has practiced for only the last year in the consumer litigation area.  She worked as a

contract attorney for Lilly Pharmaceuticals from 2007 to 2010, and at Binder & Binder on Social

Security Disability Benefit claims from 2006 to 2007.  *(Doc No. 12, Ex. C.)* I conclude that Ms.

Young's hourly rate should be $150—lower than the rates of Ms. Patterson and Bennecoff.

Plaintiff's Petition provides no evidence regarding the qualifications of law clerk Jacob

Ginsburg, who bills at an hourly rate of $180.  Because, as I discuss below, Plaintiff may not

recover fees for the work Mr. Ginsburg actually performed, I will not determine his reasonable

hourly rate.

Finally, CLS guidelines provide that paralegals should bill at hourly rates of $70 to $120.

IT specialist Jeff Ehrmann, and paralegals Christy Sunchych, Jason Ryan, and Chloe O'Connell

bill at hourly rates of $150 to $165.  Under the CLS guidelines, these rates are more akin to those

for attorneys with less than two years experience.  Plaintiff states in her Petition that these rates

were charged for the performance of "routine tasks which do not vary based on the complexity of

the case." *(Doc No. 13 at 3.)*  Kimmel & Silverman's billing sheets confirm that these were

routine tasks (which I describe further below). *(Doc. No. 13, Ex. B.)*  Accordingly, I conclude

that $100 is a reasonable hourly rate for these individuals.

C.  Hours Incurred

Before awarding fees, the Court must "decide whether the hours set out were reasonably

expended for each of the particular purposes described and then exclude those that are

'excessive, redundant or otherwise unnecessary.'"  Interfaith Cmty. Org. v. Honeywell Int'l Inc.,

426 F.3d 694, 711 (3d Cir. 2005).  In ruling on objections to a fee petition, the Court must

conduct a "thorough and searching analysis." Id.  Time that should not be billed to a client may

not be imposed on an adversary. Pub. Interest Research Group v. Windall, 51 F.3d 1179, 1188

(3d Cir. 1995).  In most circumstances, administrative tasks should not be billed to the client.

<u>See</u> <u>Williams</u> 2011 U.S. Dist. LEXIS 50635 at *19 (citing <u>Spegon v. Catholic Bishop of</u> <u>Chicago</u>, 175 F.3d 544, 552 (7th Cir. 1999)).

Defendant objects to 21.2 hours of Kimmel & Silverman's 32.2 hours in billable time, leaving 11 hours unchallenged.   Of the 21.2 hours, 10.1 hours were incurred after the April 18th cut-off in Defendant's Offer of Judgment.  I will exclude these hours in their entirety.  With regard to the remaining 11.1 hours, Defendant has submitted detailed line-by-line objections to each time entry. *(Doc. No. 15, Ex. 4.)*

Turning first to the attorneys' time, Defendant objects to .4 of 3.7 hours for Mr. Kimmel, 1.1 of 2.2 hours for Ms. Patterson, 0.4 of 0.6 hours for Ms. Bennecoff, and 5.9 of 9.9 hours for Ms. Young.  Although it appears that the number of professionals on this matter (nine) would unnecessarily increase the numbers of hours worked, I cannot conclude that any challenged attorney time entry is unreasonable.  Defendant objects primarily to what it characterizes as "administrative" tasks that are not properly billed to the client.  These tasks—reviewing emails, communicating with other Kimmel & Silverman lawyers, reviewing docket notices, and the like—are not administrative.  Unlike file maintenance, for instance, these tasks are an essential part of counsel's work for the client.

Defendant also objects to the time Ms. Young spent preparing a Motion for Default Judgment and supporting papers that were never filed. As I have explained, however, after Defendant failed timely to respond to Plaintiff's Complaint, my Chambers issued a notice that Plaintiff could seek default judgment.  (<u>See</u> *Doc No. 4.)* The  time spent by Ms. Young preparing the default documents was thus reasonable though the documents were not filed.  Ms. Young also spent two hours preparing an Amended Complaint that was never filed.  Unfortunately, because Kimmel & Silverman has offered no explanation for this entry—and the record

otherwise provides none—I will disallow those hours.

I agree with Defendant that the administrative tasks performed by non-attorneys are not properly billed to the client.  Preparing correspondence, reviewing emails from attorneys, and coordinating with a court reporter are not tasks normally billed to a paying client.  Accordingly, I will exclude 1.5 hours of 3.9 hours billed by paralegal Christy Sunchych, for what Plaintiff herself describes in her Petition as "routine" tasks.  *(Doc. No. 13 at 3.)*  For the same reasons, I will also exclude the .9 hours billed by the other paralegals and the IT specialist. I will allow 0.5 hours spent by paralegal Jason Ryan drafting a factual summary of the case.

Finally, I will not allow 0.4 hours performed by law clerk Jacob Ginsburg for "research." Because Kimmel & Silverman has provided no description or explanation as to the research, I cannot determine whether the entry is reasonable.

In sum, of 5.7 hours billed for non-attorney work, I will exclude 2.8 hours.

**Conclusion**

As I noted at the outset, although Kimmel & Silverman claims its work on behalf of Ms. Zavodnick is entirely original, the firm obviously copied documents it had prepared in earlier cases.  Moreover, a review of this Court's docket confirms that in subsequently-filed cases Kimmel & Silverman continues to claim fees for work performed on Complaints and Fee Petitions identical to those submitted in the instant case.  See Brass v. NCO Fin. Sys., Inc., No. 11-1611 (E.D. Pa.); Alexander v. NCO Fin. Sys., Inc., No. 11-401 (E.D. Pa.); Angel Rivera v. NCO Fin. Sys., Inc., No. 11-00402 (E.D. Pa.); see also Cassagne v. Law Offices of Weltman, Weinberg & Reis Co., LPA, No. 11-2791 (D. N.J.).

Further, given the uniform rejection of the questionable arguments and evidence Kimmel & Silverman has offered in support of its Fee Petition, it is difficult to accept that the firm has

advanced either in good faith.  Opposing parties should not incur the cost of responding to obviously baseless claims, and lawyers act at their own peril in claiming "cut and paste" work as original.  <u>See</u> Pa. R. Prof. Cond. 3.3 ("A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal.")   Accordingly, should Kimmel & Silverman continue this course of conduct, it may well be subject to sanctions.  <u>See</u> Fed. R. Civ. P. 11; 28 U.S.C. § 1927.

An appropriate Order follows.

**AND IT IS SO ORDERED.**

*/s/ Paul S. Diamond*

_____

Paul S. Diamond, J.